Gentlemen, we have one case on the call. The time allotted is 15 minutes for the appellant, 15 minutes for the appellee, 5 minutes in rebuttal. I don't use the timing lights, but I'll hold you to your time. Case No. 40-23 is briefed. May it please the Court. Your Honors, my name is Chris Gokian. I represent the appellant, Michael Myers, in this matter. Your Honors, I was asked to stay tonight to specifically address two issues in supplemental briefing, which I'd like to address first. The first issue is whether a hearer stays admissible at a post-conviction evidentiary hearing. Actually, yeah, at third stage. Right, at a third stage post-conviction evidentiary hearing. And the second question is whether the interview notes at issue in this case were also admissible at the evidentiary hearing in this case if the author was available to testify. Before we get to that, why don't you address the question, the first issue that you raised, as to whether there was any error in refusing to admit the Weiss notes when Leeming was testifying. I think there absolutely was an error, Your Honor. Rule 1101 states that, very clearly states that the rules of evidence do not apply at post-conviction evidentiary hearings. Are you sure you don't have to identify documents? You don't need any foundation at all? I don't know if that's necessarily true, Your Honor. Can you introduce the morning newspaper? No, I don't think so, Your Honor. Then what is it? I think the thing to do would be, for example, the rule 1101 also applies to suppression hearings and to sentencing hearings.  Well, we don't know who authored those notes. Leeming said he did not recognize them. What Leeming said was that he had no reason not to believe that they were not his notes. He had no reason not to believe that they were true, but he was specifically asked, do you know who authored these notes? Do you recognize them? He said, no. And they objected on foundation. I think, Your Honor, I think the foundational objection was in the light of the fact that the rules of evidence don't apply. I think we have a situation here where Tim Leeming has testified that he did have an intern named David Weiss, that that intern accompanied him to interview Nichols, that the interview took place on March 8, 2010. I don't know. Yeah. But the problem is, whose notes were they? Well, I think the fact that Leeming testified to those details and that the notes corroborate those details, the notes indicate that, you know, on March 8, the title of the notes say, March 8, interview with George Nichols. They say, with me and Tim Leeming. They say this document was created on March 8, 2010, shortly after the interview occurred. I searched and couldn't find a single case that suggests that you can introduce a document evidence without authentication. In fact, every case I found said you cannot. Your Honor, the authentication is a rule of evidence. I think it's in the 900s. So the only thing that 1101 says is the rules of evidence enacted by the Supreme Court do not apply in post-conviction hearings. It doesn't say that we have totally eliminated all rules of evidence. It is that, Your Honor. But I think that the rules that we do apply would just be common law rules of relevance and reliability. The trial judge told you that he would admit they would be admissible if you brought in a vice to authenticate them. He told you specifically. And that leads into your second issue. Assuming that we don't agree with you that the trial judge was correct in refusing to admit them. Now you contend that the defendant received ineffective assistance because his attorney didn't call Weiss to authenticate the notes. Unreasonable assistance, Your Honor. Yes. And what does that have to do with the grounds upon which the trial judge denied post-conviction hearing? Well, I think, Your Honor, the notes here very clearly, they represent, if believed, if Weiss were able to testify, if this Court finds that Weiss had to testify in order to present these notes. If believed, those notes indicate that they basically directly contradict the Court's ruling. The Supreme Court's ruling in this case was that George Nichols interviewed Sherry Parker, that he considered, and that he made a strategic decision. The trial judge never ruled that George Nichols interviewed Sherry Parker. That is not what he said. What he said was there was evidence that George Nichols knew about Sherry Parker, knew she was in court, and knew that she was available to testify in support of your defendant's contention that he wasn't there. That was the testimony of your defendant. That's what he said. But he said that Nichols knew she was there. Nichols was told that he was with her and that she was available to testify. But that's not why the trial judge ruled. He didn't rule on that basis. What did he say was the reason why he was denying the post-conviction hearing based on ineffective assistance of counsel? From what I recall, Your Honor, I think his final words were that he found that based on the evidence in this record, that the attorney, I'm sorry, that George Nichols knew about Sherry Parker and made a strategic decision not to present her testimony. In fact, what he exactly said was that he was aware of Parker and as a matter of trial strategy decided not to call her. Right.  Go ahead. Again, I think the notes in this case directly contradict that notion. The notes specifically say that Nichols, let me see here, it's good to say that other than Myers' mother, quote, no other witnesses were interviewed. So the idea that he made a strategic decision not to call her where Nichols' own words indicate that he didn't interview anybody but Myers' mother. Let me ask you a question. If you were a defense attorney and your client had given statements to a police investigator and to an assistant state's attorney that he was at the scene of the shooting, at the time of the shooting, that he saw the people who did the shooting, would you put on a witness to contradict those statements? Your Honor, I think in this case, considering the weakness of the state's evidence, even if there's problems with the alibi testimony in this case, I think it's- Hold on, hold on. My question is, would you put on a witness to contradict your own defendant as to his whereabouts at the time of the shooting? Would you do that? I think under certain circumstances in this case it wouldn't be an unreasonable thing to do. I think in this case- Would it be reasonable not to do it? It would if you would actually interview that witness. Why would you have to interview the witness? Your client already said what she was going to say. He said that he told Nichols that he was with Sherry Parker at the time of the shooting, that she was willing to testify to that, and then says Nichols told him he had no intention of calling her as a witness. So your client told him everything Sherry Parker could have told him, and he still said, I won't call him. And it occurs to me that if faced with knowledge that there was an assistant state jury investigator who were going to testify to statements of the defendant himself, that he was in fact there, that a competent defense attorney would never put on a witness like that. Well, first of all, Your Honor, I don't think we know for sure how the jury would have taken that. I think it's a lot to say the jury would have automatically dissociated. The jury doesn't have to automatically. You're talking about unreasonable assistance. And if it's a matter of sound trial strategy, there is no ineffective assistance. What I'm saying, Your Honor, is that as a matter of unreasonable assistance, for the post-conviction hearing, defense counsel, basically all the post-conviction attorneys had to show at this evidence hearing was that by mere preponderance of the evidence, the counsel was ineffective. So to meet that standard, they had to show that trial counsel was ineffective for not investigating this witness and for not presenting her testimony. But what is it, had he investigated her, that he would have found out? Had he investigated her, he would have found out the details of this alibi, Your Honor. The details of the alibi, he already knew them. He knew the details of the alibi. The alibi was he was with me. And although she had contradicted herself as at the time he was with her, once she said it was 3 o'clock, once she said it was 7 o'clock, but each time she gave a statement, she said he was with me. He knew that. Well, I think, Your Honor, in this case, the evidence against my client was extremely weak and he didn't really put on a defense at all. I mean, his defense was... His defense was misidentification. That was his whole defense, that the 12-year-old witness couldn't be believed... Right. And we shouldn't believe the girlfriend, A.W. That was his defense. I understand that. But I want to get more basic. If it was not an effective assistance not to put on an alibi witness who was going to contradict the defendant himself, then in that particular case it certainly could not be unreasonable assistance not to put on a witness to establish the notes which said he never interviewed her. Well, that's true, Your Honor. But I think it was an effective assistance not to present her alibi testimony despite the fact, you know, even if he knew, you know, Your Honor, as you were saying, even if he had spoke to my client and knew what the alibi was, the state's evidence in this case was so weak that I think that if we had, if there was any evidence actually pushing back against the state's evidence, I mean, as Your Honor knows, I know Your Honor has handled this case several times, you know, there's no ballistic evidence. The 12-year-old witness was a rival gang member who later recanted his statement. Audrey White admitted that she lied to the grand jury and to the police. The evidence in this case is extremely weak. So I think if we have a situation where some alibi evidence comes in, even if his statement comes in, Your Honor, we don't know how the jury would weigh, you know, whether or not he made that statement against the alibi evidence. And I think that considering that no other actual defense was presented. Now, whether or not he made that statement, you seem to forget the fact that he filed a motion to suppress that very statement. Right. And then filed a motion eliminating it, to eliminate the portion of the statement that suggested that he was there to buy marijuana. Right. So now you're going to have him denying he made the statement in the face of those. Perhaps, Mr. Feigin, we don't know how the jury would weigh the credibility of that statement versus the credibility of the alibi testimony. I think it's something that the jury should have considered. Well, you may, as a defense attorney, consider putting on an alibi witness like that, but that's not the issue. The issue is, was it a matter of sound trial strategy not to do it? In light of the fact that the defendant himself would contradict her testimony through his statements. I do not think it was sound trial strategy, Your Honor, because I think that these alibi evidence, there's a very good chance it would have changed the outcome of the trial. I think that. . . What would amuse me is if the statements were of another witness that contradicted Parker. I'd agree with you 100%. The jury would have to weigh it. Right. But the statements from the defendant himself, Parker's going to say he was with me in my apartment when the shooting took place. Two witnesses are going to get on the stand to say the defendant told me he was there at the shooting and that he witnessed the shooting, and you have motion in limiting and in motion to suppress that acknowledges the existence of those statements. So how is it not trial strategy not to put that in front of the jury? I think that. . . It would hurt you. It wouldn't help you, the alibi. I think the alibi would help, Your Honor. I think that if we have a situation where even if the statement comes in, it's possible that defense counsel or even if my client, if he chose to testify, would be able to explain why he made that statement. It's possible that he made that statement because he was in trouble for some other cases. Oh, he was. He said that he would tell them who the shooters were if they helped him on another case. Right. So perhaps he had heard about the shooting and knew that the detective was investigating that shooting and offered to help. Maybe he had heard through the grapevine that these people were involved, and he said, oh, I could identify those people because I want help on this other case. Then we realize that he was actually implicated in this case. So as he testified, he told his attorney that he had an alibi, and his attorney refused to investigate it. So I think that it would be much stronger in this case to provide, in addition to emphasizing the very weak identification evidence from the State, to provide an additional affirmative evidence of the fact that my client was actually somewhere else. And in this case, as Your Honor knows, even the State's witnesses don't even agree about how many people were out there. Even the State's prized witness, the 12-year-old Dionda Wilson testified, there were actually eight shooters. The State prosecuted only seven. Can I ask a quick question? Yes, you may. From whence did Nichols get the knowledge of Sharon Parker in order to issue a subpoena for her attendance at trial? I think the issue, Your Honor, is if we're talking about whether to investigate, I don't think the issue is just mere knowledge that this witness exists. I think it means he actually has to interview her. The fact that she was listed on discovery and that she was subpoenaed does not necessarily mean that she was actually investigated. When you say investigated, what would he have to know about Sharon Parker other than she was an LMI witness? Was there anything in this record that suggested that she would have been caught for any other purpose? Not as far as I know, Your Honor. LMI only. So he issued a subpoena. Right. He issued a subpoena for a witness that he knew was an alibi witness because his defendant told him that. Right. So what else did he have to investigate? I think it would be odd if your client tells you that you have an alibi witness and then just to never speak to that person. I think that there are details in the alibi that she might remember. Perhaps before my client was approaching, as my client was leaving, there are details that she would know that counsel should have investigated. And I think that if he investigated this witness, who knows what other witnesses might have been available to him, but he didn't. I mean, even Sherry Parker's own testimony and Michael Myers' own testimony testified that when he went to visit her, there were several other people in that apartment, and none of those people were called, and they could have been called. I mean, as we know, Sherry Parker had a problem with drugs, and maybe that might have impacted her. You're not suggesting that Nichols didn't talk to his client, are you? No, I'm not suggesting that, Your Honor. I'm just at a loss as to why it would not be a matter of sound trial strategy not to call an alibi witness that would contradict the defendant's own statements. That troubles me, why that isn't sound trial strategy. I understand that, Your Honor, but I think under the circumstances of this case, we have to say that, you know, we have a situation where my client's defense, basically, was that the only witness that my client called, that George Nichols called, was my client's mother to say that one of the victims was, like, nice to her sometimes, and, therefore, my client didn't have a motive to shoot her. I mean, that's the evidence for my client. And so, in addition to the identification evidence, the alibi evidence would have made it even stronger, even if that statement came in, because I think that statement may be able to be explained away. Okay. Therefore, Your Honors, because the evidence in this case is extremely weak, as I said, you know, there's no ballistic evidence. The state's two witnesses are extremely impeached. It basically comes down to the credibility of two impeached witnesses. The number of people out there isn't even clear. I think that – What witness was impeached? Well, the only two witnesses to implicate my client in this – I'm following rules on Deandra Wilson and found in her last decision that the trial judge committed no error when he disbelieved her in her recantation. Disbelieved the recantation. Right, Your Honor. But his testimony at trial was impeached, Your Honor. So I think that if you look at what he actually said, he said that even apart from the fact that he was a 12-year-old rival gang member who testified that my client and the other alleged shooters were his enemies, he testified that, Mark, he saw them shooting at the victims, but told the police and the grand jury that actually he only saw Kevin Young. All the other shooters had their faces covered. Detective Winston corroborated that that's exactly what he told him. I told the objective witness, Denise Brady said, when she was near the scene, she saw Kevin Young and then saw the other shooters. Only Kevin Young's face was visible. The other shooters had their faces covered by masks. The other – and Mr. Myers – I'm sorry, Mr. – Mr. Wilson also testified that he was – he saw my client shooting from above on a balcony, but then admitted that the grand jury, he didn't actually see that, and also admitted – and I'm sorry, and a police officer also testified that when he went up to that balcony, it was impossible to see underneath from where Winston said that he found her. But the jury believed him and reaffirmed it. The jury believed him, right, without the solid evidence, Your Honor, yes. But the alibi witness didn't react to the same thing. Whether he could have called an alibi witness or he didn't call an alibi witness, the question becomes was it a sound strategy not to do it because the statements that would have come in would have placed your client right at the shooting. That's true, Your Honor, but I think, again, those statements can be explained away. Let's remember what the standard is here. The standard of the evidence you're hearing is by mere preponderance of the evidence, and a standard for Strickland is a reasonable probability. So my client only had to show that there's a reasonable probability, that he could prove by preponderance of the evidence that there's a reasonable probability. What's the manifest weight standard on the factual finding? The manifest weight standard on the ultimate finding by the court in light of all the evidence it did consider, which does not include these notes, Your Honor. It's a manifest weight standard on the factual findings. And the factual finding was, in fact, that it was a sound trial strategy. And, again, Your Honor, I think that we need to consider the fact that he did not consider these interview notes when he made that determination. I mean, I think the interview notes greatly strengthened the case. The whole purpose of this hearing was to determine whether or not trial counsel was ineffective for failing to investigate Sherry Parker. The interview notes of the interview with that exact trial attorney said, I did not, essentially said, I did not interview her. I only interviewed the mother. I interviewed no other witnesses. And, yeah, basically, he didn't interview anybody but Meyers' mother. So if we have a situation where the trial attorney says, look, he never interviewed this witness, then we have an extremely weak state case on impeached identifications. And so the question is, Your Honor, the question is whether this alibi will change the outcome of the trial. And I think even if that statement came in, even if that statement was presented, the jury would have had to decide whether or not this statement or the alibi statement against the state's weak evidence. Actually, you're fixing the wrong issue. You know it. The only ground that you went on the post-trial motion was ineffective assistance of trial counsel. And sound trial strategy is not ineffective assistance of counsel. That's true. You can talk about weak. You can talk about strong. You can talk about the other thing. The question boils down to the fact as to whether the trial court's finding that Nichols' failure to call her was a sound trial strategy. The question is, is that against the manifest way of the evidence, or if you want to cause the ultimate issue, is it manifestly erroneous? That's the question we have to decide. You know, whether the evidence was weak or the question wasn't weak. There was the issue in the original appeal, and we said affirm. And we had a post-conviction on a recantation, and we said affirm. Right. And so the only issue that you came to that post-trial proceeding with at third stage was the question of whether he could prove by a preponderance of the evidence that there had been ineffective assistance of trial counsel. Was the only issue there? Right, Your Honor. And I think that to show ineffective assistance of trial counsel, you have to show that even for the manifest way standard, you have to show that there's a reasonable probability of a different outcome. And I think that the court's determination was against that standard, although I'm not sure. The only other thing you have to show is that the failure to call her as a witness or an investigator was unsound trial strategy. That's your part. Yes. And I think that in this case it was, Your Honor. Okay. Thank you. The issue seems to have been narrowed for you. Certainly, Your Honor. For the record, my name is John Nowak. I'm the Assistant State's Attorney representing the people of the state of Illinois here. Your Honor, this defendant received a thorough evidentiary hearing and admitting the intern's notes would not have changed the result. The intern's notes here. How did you know that? Because what's in the notes, Your Honor, is essentially duplicates what Assistant Public Defender Timothy Leeming testified to. And here are the similarities that are between them. APD Leeming testified that he went, he interviewed George Nichols at his home, again, 20 years, 21 years after the trial. He testified the trial counsel was wearing a bathrobe, counsel could not remember much about the case, and did not remember Parker, even though he subpoenaed him. That's all in the notes. What the notes added was that Nichols also said that he remembered that a security guard was shot, doing a crossword puzzle, was at Stateway Gardens, and there were multiple defendants. But that's it. And in there, in the notes, it says that there were no other witnesses, didn't talk to anybody else, didn't know of Sherry Parker. But Leeming knew of Sherry Parker. He amended the answer to discovery to add her as a potential witness. He subpoenaed her to trial. And defendant, at this evidentiary hearing, admitted that when he pointed out at trial, said to his counsel, Sherry Parker's here, the defendant testified at this evidentiary hearing, yes. Nichols told him, yes, I know she's here. Do we have anything to indicate that he, if we assume that he knew of her, I mean, it says that in the record. I don't know. If we assume that that's true, do we know that he knew what she was going to testify to? We do, and here's how. And, again, there was a third stage evidentiary hearing here. The trial court made factual determinations, and the standard review is whether those are manifested or not. And here is what the trial court looked at to determine whether George Nichols actually knew of Sherry Parker, interviewed her, and made a strategic decision not to call her. First off, we have APD Leeming. He testified at the evidentiary hearing. He said when he got this case on post-conviction, he went to his trial file. He looked through his trial file. Nichols was also an assistant public defender. Counsel, was there anything in those notes that said that Mr. Nichols knew all of this about Sherry Parker but decided not to call her because of whatever reason you're suggesting? I mean, where do you get that from? How do you know that? I mean, it's all well and good 30 years later to say here's how we know it, but I'm not so sure. Your Honor, there are several reasons we know it. And let me start off with those trial counsel's notes. The APD Leeming found in the Cook County Public Defender's trial file for this. There, handwritten notes dated March 27, 1990. Interview with Sherry Parker, a friend of Michael's family. It was conducted on March 27, 1990 at her address of 3549 Federal Apartment 102. Goes through it, and he has several paragraphs, handwritten, contemporaneous notes, saying that he interviewed Sherry Parker. She talked about what a good friend Michael was to her. And when asked specifically, these are handwritten notes, contemporaneous. Ms. Parker, do you think Michael committed the incident? Quote, no, he was just hanging with the wrong bunch of guys on that day. Except for one problem. Leeming was unable to identify those notes. He didn't know who wrote them. He didn't know who wrote them, Your Honor. That is true. But one thing that you neglected to answer to Justice Cunningham's statement is the defendant testified at the post-conviction hearing that he told Nichols that he was with Parker at the time of the shooting. And he also stated that Nichols told him that he knew that Parker was in the courthouse but did not intend to call her as a witness. So we do know from the defendant's own testimony that Nichols was aware of Parker. We know that from the subpoenas, too, and listening to her as a witness. We know that the defendant told Nichols that he was with Parker and that she would testify to that, and he said he would not call her. I mean, that's where the information comes as to what Nichols actually knew. It came out of the defendant's own mouth on examination during post-conviction. It did, Your Honor. Exactly. As I said before, defendant testified at this post-conviction hearing, at this evidentiary hearing, that he told Nichols that Parker's here, and Nichols expressly told him, I know she's here. I'm not calling her. But as for these notes, they're handwritten. It's hard to imagine how these notes got into that trial file, handwritten notes contemporaneous. But, again, that wasn't it. That wasn't the only evidence, again. Where were the Weiss notes? Where were they found? They came in from the, I believe it's at least his third post-conviction counsel. They had these notes, this one-page note from this intern who accompanied Assistant Public Defender Lehman on this interview of George Nichols. So they had it. They wanted to introduce it. And frankly, Your Honor, having it introduced would not have changed the result here. And, in fact, it actually, again, these notes indicate that Nichols, again, this is 20 years after the fact. So he didn't talk to anybody, didn't know Sherry Parker. But we know that that can't be true. We know why the trial court would not have given that any weight, because, of course, Nichols knew. He amended his answer to discovery to add Parker as a witness. He subpoenaed her, and his defendant admitted to the evidentiary hearing, Nichols knew she was there. I mean, he subpoenaed her. And he told the defendant, I'm not calling her. So even there, we know that based on, even if these notes are taken, it's true. The fact that 20 years later, George Nichols, who showed up at the door in his bathrobe and unfortunately died of cancer before this evidentiary hearing, no longer remembered a witness who he interviewed, potentially interviewed 20 years earlier, who just said, I'm a family friend. It's not surprising he didn't remember her. It's not surprising at all. In fairness, it's apparent from reading the trial judge's comments before he ruled that he wasn't too enthused with the credibility of either the defendant or Ms. Parker. But the fact of the matter is the judge never made a finding that Nichols had, in fact, interviewed her. He never made that finding. What he did say is that he believed it was a matter of trial strategy not to call her. And that was after he recounted the fact that there were two witnesses who were going to testify, or were available to testify, had an alibi witness been put on, that he, in fact, the defendant said he was there, not with Ms. Parker. He never told any investigating officer when he gave these statements that he was with Ms. Parker. He denied in direct testimony, in post-conviction, that he ever gave the statements and then admitted that there was a motion to suppress those very statements made. And there is a motion to suppress, and there's also a motion to eliminate. And the trial judges came down and said, after it was all over, that it was a matter of trial strategy and therefore it wasn't an effective assistance of counsel. And that wouldn't change even if the Weiss notes had come in. It wouldn't make any difference. Assume for a moment that the trial judge would have found that he didn't ever interview her. That still wouldn't have changed his finding that it was a matter of trial strategy. That's correct, because if he puts, as Judge Flood made clear in his findings, if Nichols, assuming that Sherry Parker was giving this alibi statements in 1990, that Judge Flood found that it was a strategic decision not to put that on because that would have opened the door to letting in a defendant's statement where he didn't say he was with Parker. Twice he gave two separate statements that, no, I was there. I was there buying marijuana. He wanted that part out. But he puts himself at the scene. So it would contradict that alibi evidence. It would not have changed the result. But, Your Honors, the focus here, this is a narrow issue on appeal. This has been litigated multiple times on direct appeal and several times on post-conviction litigation. In fact, this is the third time up on post-conviction for Mr. Myers. The narrow issue here is whether counsel was ineffective for not interviewing and calling Parker. And the standard here is whether the trial judge's ultimate decision here was manifestly erroneous. Your Honors, it wasn't. He made a strategic decision. And it's not surprising that Judge Flood made specific credibility findings not finding Parker to be credible. She testified at the evidentiary hearing and stated in their affidavit that she was with the defendant at 9.30 p.m. when the shooting occurred. But in 2009, she said that she was there. They were together at 3 o'clock and that the shooting occurred during the day. But that was so many years after. Is that really so significant an impeachment that it rises to the level that you're trying to make it out to be? Your Honors, it was so many years later. But I'll tell you what, Your Honors. It was much closer in time than the 20 years that elapsed between George Nichols, the time of the trial interviewing Sherry Parker, and the 20 years that passed when A.P.D. Lehman shows up with his intern at George Nichols' door. That was 20 years' difference. Here, this affidavit initially from Parker was in 1999. And here, this also goes to the credibility of Judge Flood now. She testified at the evidentiary hearing that she signed it. She didn't know who wrote it. She signed it even though she knew parts of it were false. She still signed it anyway. And once A.P.D. Lehman made the decision that he wasn't going to go forward with this post-conviction petition and he informed the family of it, he testified at the evidentiary hearing that he received a call from the defendant's so-called contact person, and that person urged him to continue with it. And that person told A.P.D. Lehman, he testified, that this person said, Sherry Parker, she wants to help. She'll say anything you want to say. It all came out at the hearing, so it's not surprising that Judge Flood found her not to be credible. I suppose I'm hung up on a different problem. The actual finding of the trial, Judge, after he recounted the evidence and recounted what Detective Winstead could have testified to and what the assistant state's attorney could have testified to, and the fact that the defendant's testimony that he never gave a statement was impeached by the presence of his own motions to suppress and motions to eliminate, the trial court made a finding. He said that the reasonable inferences to be drawn from the totality of the evidence presented at the post-conviction hearing are that George Nichols was aware of Sherry Parker and as a matter of trial strategy decided not to call her. Does the question of whether Nichols ever interviewed her in face of his knowledge as to what she was going to testify to and how that would affect the defendant with the statements, does it make any difference that he didn't interview her? Ultimately not, Your Honors, because we do have in the record that he added her as a witness in discovery, subpoenaed her, and his defendant admitted at the hearing knew that Nichols knew that she was there. So we can infer, even aside from the 1990 notes, that he knew of her, presumably interviewed her. But, again, whether he interviewed her. I don't think we have to prove. There's no evidence in here that the trial judge ever presumed that he interviewed her. The only thing the trial judge found is that he was aware of her. In your, the defendant specifically testified, he told Nichols what she would testify to with her. So the question that I have, and I'm back to this, you know, it's not all that complicated. The question is, does it make any difference whether he interviewed her or he didn't based upon his knowledge of what she was going to say and his knowledge of the statements the defendant himself had given, which contradicts her alibi? It ultimately doesn't, Your Honor, because his defendant testified to it. He told Nichols, he testified that he told Nichols what Sherry Parker would say, that she provided this alibi. But, again, as Your Honor notes, that's contradicted entirely by Meyer's own statement before trial, that he wasn't with her, that he was at the scene. And, again, yes, this is a narrow issue before this court. It is whether counsel was ineffective for not calling her as a witness, for not presenting her as a witness. Well, he fixes it as counsel was ineffective for not interviewing her. That's what he fixes it at, not interviewing her and not calling her. But the question that I have is a more basic question, and that is, is it reasonable trial strategy? It's not, Your Honor, it's because even if you presume that all his only knowledge of Parker was from defendant, it was a strategic decision not to call her. Let me add something to Justice Hoffman's question. I had to make it mine. Is it reasonable to have made the decisions, the strategic decision not to call her without interviewing her? I'm sorry, Your Honor, I'm not sure I'm sure. I'm not sure I'm sure I can make it to a conclusion without interviewing her when she's basically the only witness that could remove the defendant, that could provide an alibi for the defendant. Putting aside the fact that he, his own statement is contradictory, is it, was it reasonable for him to not talk to her at all and then strategically decide I'm not going to call her, although I haven't talked to her? Given that particular hypothetical, that he's already learned from the defendant that she's going to say she was with me, but faced with putting her on and having her say that, testify to that at trial, and then having the defendant's own statement come into repeach, that would have caused more harm than good. And again, this has to be reviewed as was that a strategic decision by defense counsel? And because we're so far into this process, Your Honors, we're at a third stage of an interim hearing. What's going to manifest in the witness? We make a lot of, you have made a lot of inferences, the trial judge has, we have. Now, there are lots of inferences to be drawn here, but could it be also that the counsel decided he didn't need to talk to her since he already knew what she was going to say? And is that reasonable for him to assume that since she was probably the most important witness for the defendant, if you want to call it that, is it reasonable for him to assume, I'm not going to talk to her, I know what she's going to say? Your Honors, if that is an issue for this Court, all this Court needs to do is look to those contemporaneous handwritten notes that APD Leeming testified that he found them in the public defender's trial file for this defendant. Those are handwritten contemporaneous notes. The idea that somehow that those were planted, I mean, there's no other way to explain that these are authentic notes. He interviewed her in 1990. It's not surprising that in 2010 that he doesn't remember her. In these contemporaneous notes, if this Court is concerned about whether he interviewed her, please look at the notes. I attach them as an appendix to the State's brief in full. He, those are handwritten notes from the trial file. He said that he interviewed her in 1990, March 1990, and she said, oh, he was just, Michael's a good friend of mine. He was with the wrong bunch of guys that day and just happened to be in the wrong place when that incident occurred. Why, if you're concerned about whether he interviewed her, look at those notes. If he had interviewed her and that's what he told her, why would he put her on the stand to say he's in the wrong place at the wrong time? The only problem I have with that argument is a simple one. It's true that Leeming testified as to what was in those notes, and there was no objection to his testimony. But it is also true that when asked who composed those notes, Leeming said, quote, I have no idea. Of course not. So, you know, you're making the argument as if it was Nichols that wrote those notes and Nichols knew what was in those notes, when in fact we don't know who wrote those notes because they were never authenticated. Granted, unlike the Weiss notes, there was no objection. In Weiss, there was an objection. It was a foundational objection, and they were never authenticated. But in this particular case, Leeming admitted in testimony that he had no idea who composed those notes. So I don't think we can suggest that the existence of those notes established that it was Nichols that took them or that Nichols knew the content of them. Someone in the Public Defender's Office at the time before trial took these notes. Pauline Parker admitted in her testimony that she talked to somebody before trial, but it wasn't Nichols. She admitted that. Right. So we've got these contemporaneous notes. Whether they're written by Nichols or not, someone at the Cook County Public Defender's Office on March 27, 1990 That gets right back to my question. I don't have anything to strongly suggest to me that Nichols ever talked to this woman in that way. But again, Your Honors, defendant testified at the evidentiary hearing that he told Nichols about this purported alibi and that Nichols, therefore, was aware of it based on defendant's own testimony at the evidentiary hearing. So taking that, even taking that as true, that that part that he told Nichols that, Nichols' response was, yes, I know. She's here. He subpoenaed her. I'm not calling her as a witness. And again, viewing this through the frame of whether he was ineffective for not calling her as a witness at trial, was that a strategic decision? Yes, Judge Flood made that decision. It was not manifestly erroneous. If he puts her on the stand, what comes in is a damaging statement by the defendant himself that contradicts that purported alibi and puts him right at the scene. Well, I suppose it boils down to one question, and that is, can it be said that the trial strategy was not a reasonable trial strategy? It doesn't have to be winning. It doesn't have to be a winning strategy. It just has to be a real reasonable trial strategy under the circumstances in which Flood found that it was. Yes, Your Honors. That's the standard. This is not what would some other trial attorney do. It's viewed under Strickland, but even then, it's even more deferential at this point because we're talking about a third-stage evidentiary hearing, and whether Judge Flood's decision was manifestly erroneous. It wasn't. Even if those notes had come in, the result would be the same. So for these reasons and those in our brief, Your Honor, we ask that this Court affirm the trial court's denial of this post-conviction petition. Thank you. I'd like to briefly touch on something Justice Cunningham said. I don't think that we can say that, Strickland prejudice aside, I don't think we can say that an attorney made a sound trial strategy, had a strong trial strategy in choosing to make a strategic decision not to call an alibi witness that he never interviewed. It has to be strong or only reasonable. It has to be a sound trial strategy. I don't think it's a sound strategy. I don't think we can say that it's a sound strategy. Again, Strickland prejudice aside, I don't think we can say it's a sound strategy to not interview a critical alibi witness. So in other words, you are prepared to say that no reasonable trial or effect could find the failure to call an alibi witness who would be contradicted by the defendant's own statements to make a finding that that was trial strategy. No reasonable trial or effect could have found that. I don't know if the standard of counsel's ineffectiveness is whether no reasonable person could find that, Your Honor, but I think that... Well, no, there's got to be a finding here, and that was Clark's finding. Now, I gave you no reasonable trial or effect. That's only a manifestly weight standard. The standard in this case is manifestly erroneous, which is much greater than merely manifest weight. I gave you the benefit of a lower standard. I think, Your Honor, I still think the question here is whether, in a weak state case where there was no defense, whether it was whether counsel made a strategic decision not to present an alibi witness that he never interviewed. I think we can say that I think it's fair to say that it's not a strategic decision not to... Can I ask you a question? Please do. If a defense attorney put on an alibi witness who was directly contradicted by the defendant's own statements, could you say that that's ineffective assistance of counsel? I say that's ineffective assistance of counsel. Well, it depends on the facts of the case, Your Honor. No, I just gave you the facts. Well, I think here, Your Honor, I think it's fair to say that... Would you be making the argument if he put her on? Well, not necessarily, Your Honor, because here... I mean, in this case, we know from Detective Winstead's testimony that the defendant, when he made that statement, when he said... He did not use the shooter. He did not use the shooter. He supposedly put himself at the scene, but he also had a reason for it. He said he wanted to get some leniency in another case. I think it's reasonable to say. I don't think that... No, no, no. That's not what he said. Let's be fair with the record. What he said was he wasn't going to tell them who the shooters were until they agreed to help him on another case. That's what he said. Right. They didn't agree, so he didn't tell them. Right, but I think it's clear to show that he wanted leniency on another case, which may explain why he wanted to speak to the police and gave his statement in the first place. But he testified that as soon as he had... As soon as George Nichols was appointed, he told them about his alibi. And I'd also like to point out, Your Honor, is that Parker's... I'd like to replicate what Leeming said. Leeming said that Nichols had trouble remembering the case. The notes say Nichols, quote, remembered the case. Leeming said that Nichols couldn't recall or didn't think that they'd had a discussion about which witnesses he called. The notes indicate that no other witnesses interviewed didn't talk to anyone else. So I think that because of the weak state's evidence in this case, Your Honor, because my client did not afford the opportunity to have a full evidentiary hearing with all the best evidence he could provide, we respectfully request that this Court reverse the remand for an evidentiary. Counsel, thank you. Thank you very much. The Court will be taking other advice. Court is adjourned.